# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 2:20-CR-30 |
| vs. | : | JUDGE GRAHAM |
| RADOSLAV BOEV, | : | |
| Defendant. | : | |

## DEFENDANT'S EMERGENCY MOTION FOR RELEASE DUE TO THE COVID-19 GLOBAL PANDEMIC

Now comes the defendant, Radoslav Boev, through counsel, pursuant to 18 U.S.C. §§ 3142 (i) and 3145 and moves this Court to release him from custody on release conditions that include home confinement at his mother's home in New York. The Defense asserts that there has been a significant change in circumstances that mitigate in favor of his release on conditions, namely, the current pandemic and the novel coronavirus (COVID-19). There has been at least one reported case of COVID-19 in the Jackson Pike detention facility where he is currently being held. Defense requests the Court to release Mr. Boev on release conditions in which included electronic home confinement to his mother's residence in New York. Counsel has communicated with Assistant United States Attorney Michael Hunter and he objects to the release of Mr. Boev.

## BACKGROUND

Radoslav Boev was arrested on January 16, 2020 in New York on an arrest warrant issued January 13, 2020 pursuant to a criminal complaint alleging violations of 21 U.S.C. 841(a) and 846 (ECF #1). He was transported to the Southern District of Ohio in January and he has been held in custody at the Franklin County Correction Center II (Jackson Pike). Mr. Boev was indicted on

February 18, 2020 in a one count Indictment charging violations of 21 U.S.C.§§841(a)(1); 841(b)(1)(C) and 846 (ECF #8).  He appeared before Magistrate King on February 26, 2020, for arraignment on the Indictment and ordered to remain in custody pending trial.  He has not had a hearing in Ohio on the issue of detention.

On March 9, 2020, Ohio Governor DeWine declared a state of emergency in response to the COVID-19 virus. *See* https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/signs-emergency-order-regarding-coronavirus-response. As of March 9, 2020, there had been three known coronavirus cases in Ohio.  On March 11, 2020, the World Health Organization (WHO) declared the outbreak of novel coronavirus (COVID-19) to be a pandemic.  On March 13, 2020, the President of the United States declared a national state of emergency in response to the COVID-19 outbreak. *See* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. In an effort to slow the spread of the disease in the United States, on March 15, 2020, the Centers for Disease Control and Prevention (CDC) published guidance recommending that

> …for the next 8 weeks, organizers (whether groups or individuals) cancel or postpone in-person events that consist of 50 people or more throughout The United States.  Events of any size should only be continued if they can be carried out with adherence to guidelines for protecting vulnerable populations, hand hygiene and social distancing.

CDC's Notice Regarding Public Gatherings; https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-ready-for-covid-19.html.

The White House announced on March 16, 2020, that the WHO and CDC agree that the number of COVID-19 cases is far greater than currently reported because of testing and reporting delays, strict criteria for testing and other considerations.  Every report of infection numbers lags

2

by several days. On March 22, 2020, Governor DeWine and Ohio Health Department Director Dr. Acton issued a stay home order for the State of Ohio effective for two weeks until April 6, 2020.

Dr. Amy Acton, the director of Ohio's Department of Health, conservatively estimates that 1% of Ohio's population has a current COVID-19 infection. *See* https://www.wcpo.com/news/national/coronavirus/dewine-confirms-fourth-covid-19-case-will-issue-new-rules-for-mass-gatherings-in-ohio. As of April 1, 2020, there are 2,547 confirmed cases of coronavirus and 65 deaths in Ohio. *See* https://coronavirus.ohio.gov/wps/portal/gov/covid-19/home/dashboard. There are 391 coronavirus cases in Franklin County alone.

Mr. Boev has remained incarcerated since his arrest in the Franklin County Corrections Center II (Jackson Pike). A news report from January 14, 2020 detailing the conditions inside Franklin County Jail report, photos from the jail of "urinals filled with urine, feces, vomit and other bodily fluids as well as pictures of untreated mold." *See* https://www.nbc4i.com/news/local-news/exclusive-franklin-county-officials-respond-to-poor-jail-conditions/. News reports state that the jail hopes to clear up their mold issue within six to eight weeks as of mid-January 2020. This means that the process for cleaning the jail may still be ongoing. https://www.nbc4i.com/news/local-news/exclusive-franklin-county-officials-respond-to-poor-jail-conditions; *see also* https://www.nbc4i.com/news/local-news/the-stench-is-disgusting-deputies-inmates-complain-about-franklin-co-jail-conditions/. These problems with mold and drainage at the Franklin County Jail have been reported to have been ongoing for three months prior to the news investigation. *Id.*

Mr. Boev's mother has confirmed that Mr. Boev could reside on electronic home monitoring at her residence in New York, NY.

## LEGAL ANALYSIS

Mr. Boev was indicted in a one count Indictment for violations of 21 U.S.C.§§ 841(a) & 841 (b)(1)(C) and 846 which carry a rebuttable presumption in favor of detention. The defense asserts that the spread of the COVID-19 virus to the Jackson Pike Jail where Mr. Boev is being held presents an increased risk of preventable illness or even death should he contract the virus based on his age. The Eighth Amendment to the United States Constitution provides that excessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishment inflicted.

Furthermore, the Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Since Mr. Boev's original order of detention at Jackson Pike, the new coronavirus strain COVID-19 has spread rapidly across the world, through Ohio and into Columbus and Franklin County. At FCCCII, Mr. Boev is at much graver risk of contracting this dangerous disease than if released to home confinement, and his detention at FCCCII has become tantamount to a cruel and potentially health-threatening or life-threatening punishment. He cannot practice social distancing and does not have access to hand sanitizer in the facility. On March 31, 2020, during a call with a client being held at Jackson Pike, the Office of the Public Defender for the Southern District of Ohio received the following report:

> On Friday there were 3 officers confirmed with COVID-19 and yesterday another 2. That the guards are telling the inmates there **are 5 confirmed cases of guards** and that another 9-15 guards are gone (likely just for exposure/self-isolation) 2 of the guards that normally are monitoring his tank – 2 east 9 – are gone. They are locked down 24/7 in the pod. He currently has 18 people with him and says he cannot get 6 feet away from everyone at any point. They share a toilet, shower and sink amongst them all. They have been provided a few bars of soap that they have broken up among them all. He also says that there is still black mold in the Jackson Pike facility. He says that on his unit 2-east-9 there is mold in the last window that they painted over.

4

Mr. Boev's trial was originally set for April 6, 2020, (ECF #10) but that date was subsequently continued to May 6, 2020. (ECF #14). It is likely that the trial date will have to be continued because defense counsel has not been able to fully investigate the case, to meet with Mr. Boev at the jail or even to review all of the evidence in the case. One of the major issues in the case is determining what type of substances were seized by the government. Counsel has not been able to hire an expert to test the substances seized by the government to determine what is their chemical make-up. On March 12, 2020, Chief Judge Marbley issued a General Order (#20-02) stating:

> This Court issues this General Order in response to the recent outbreak of Coronavirus Disease 2019 (COVID-19) in the Southern District of Ohio. There are multiple confirmed cases of COVID-19, in response to which the Governor of the State of Ohio, Michael De Wine, has declared a state of emergency1 which, among other things, limits large indoor gatherings. The Governor's Declaration follows the Centers for Disease Control and Prevention ("CDC") "Interim Guidance," recommending that all employers consider how best to decrease the spread of COVID-19, including the review of guidance from state and local health officials.
>
> Given the outbreak of cases of COVID-19 in this District and the severity of risk posed to the public, and given the CDC mandate and the Governor's declaration, it is hereby ORDERED that, effective Thursday, March 12, 2020:
>
> (1) All civil and criminal matters scheduled for jury trial before any district or magistrate judge in the Southern District of Ohio, including any associated deadlines, are CONTINUED for Thirty (30) Days, pending further Order of the Court;

On March 20, 2020, Chief Judge Marbley issued a new General Order #20-05, closing the United States District Court for the Southern District of Ohio to the public for fourteen days beginning on March 23, 2020 and all trials scheduled to commence within that time frame are continued until further notice of the Court.

The new developments surrounding COVID-19 and the conditions in FCCCII all necessitate Mr. Boev's release from custody. The defense requests that the Court order Mr. Boev's

5

release from custody and transfer to home confinement, in addition to any conditions the Court deems necessary and appropriate, and is prepared for a bail hearing if necessary.

For health of all involved, defense counsel further respectfully requests that any hearings on this emergency motion for reconsideration of bail conditions be conducted by telephone or video conference if at all possible. *See* General Order #20-05. At such a hearing, the defense would waive Mr. Boev's presence for efficiency and speed, and to protect the safety of all the attorneys, FCC and USMS personnel and Court personnel. *See* Fed. R. Crim. P. 32.1 (b)(1)(B); *See also* Fed. R. Crim. P. 43.

### I. The Bail Reform Act Requires Mr. Boev's Release.

A "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States Marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). The circumstances that existed when Mr. Boev was ordered detained have changed. There is a pandemic that poses a direct risk to Mr. Boev that is far greater if he continues to be detained during this public health crisis. Additionally, there is no greater necessity for the preparation of a "person's defense" than access to counsel. The FCCCII canceling of all social visits constitutes "another compelling reason" for temporary release within the language of § 3142 (i).

As an initial matter, the Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Salerno*, 481 U.S. 739, 755 (1987)(suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). One charged with a crime is, after all, presumed innocent. *Stack v. Boyle*, 342 U.S. 1, 4 (1951).

This Court should consider the "total harm and benefits to prisoner and society" that continued prehearing imprisonment of Mr. Boev will yield, relative to the heightened health risk posed to Mr. Boev during this rapidly encroaching pandemic. *See Davis v. Ayala,* 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., Concurring) (calling for heightened judicial scrutiny of the projected impact of jail and prison conditions on a defendant).

## II. INMATES ARE AT HEIGHTENED RISK OF CONTRACTING COVID-19

Conditions of pretrial confinement create the ideal environment for the transmission of contagious diseases. *See* Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047 (Oct. 2007), https://doi.org/10.10865/521910. Inmates cycle in and out of the county jail pretrial facilities from all over the world and the country, and people who work in the facilities leave and return daily, without screening. Incarcerated people have poorer health than the general population, and even at the best of times, medical care is limited in county pretrial detention centers.

According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe," which means "infection control is challenging in these settings." *See* Letter, Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States (March 2, 2020), https://law.yale.edu/sites/default/files/area/center/ ghjp/documents /final_covid-19_letter_from_public_health_and_legal_experts.pdf.

Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with high numbers of cases. *See* Nicole Westman*, Prisons and Jails are*

7

*Vulnerable to COVID-19 Outbreaks,* Verge (Mar. 7, 2020), https://www.theverge.com/2020/3/7/21167807/coronavirus-prison-jail-health-outbreak-covid-19-flu-soap. In China, officials have confirmed the coronavirus spreading at a rapid pace in Chinese prisons, counting 500 cases. Rhea Mahbubani, *Chinese Jails Have Become Hotbeds of Coronavirus As More Than 500 Cases Have Erupted, Prompting the Ouster of Several Officials,* Bus. Insider (Feb. 21, 2020) https://www.buisnessinsider.com/500-coronavirus-cases-reported-in-jails-in-china-2020-2.

Even Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir detention amid increasingly deteriorating conditions defies basic human decency." Jennifer Hansler & Kylie Atwood, *Pompeo Calls for Humanitarian Release of Wrongfully Detained Americans in Iran Amid Coronavirus Outbreak*, CNN (Mar. 10, 2020) https://www.cnn.com/2020/03/10/politics/mike-pompeo-iran-release-detained-americans-coronavirus/index.html. Courts across Iran granted 54,000 inmates furlough as part of the measures to contain coronavirus across the country. Claudia Lauer & Colleen Long, *US Prisons, Jails on Alert for Spread of Coronavirus,* Associated Press (Mar. 7, 2020), https://apnews.come/af98b0a38aabedbcb059092bd356697.

More locally, in Cuyahoga County, Courts have released inmates in the local jail causing "the population has decreased by nearly 600 inmates, from 1,952 on March 9 to 1,374 on Thursday, as officials scramble to make room in the jail in case a quarantine is needed." *See* https://www.cleveland.com/court-justice/2020/03/ohio-supreme-court-chief-justice-calls-for-uniform-buy-in-among-judges-in-response-to-coronavirus-pandemic.html; *See also* *https://www.10tv.com/article/officials-taking-steps-reduce-county-jail-populations-ohio-2020-mar*.

8

Furthermore, we now know that COVID-19 may become deadly to any individual, not just those that are elderly or have compromised immune systems. On March 25, 2020 there was a report in Los Angeles of a seventeen-year old boy who had no underlying conditions had died and who had tested positive for the coronavirus, although further testing is being done. *See* https://abcnews.go.com/Health/wireStory/boy-17-coronavirus-dies-cases-surge-california-69783979. Mr. Boev's medical history does not include asthma or breathing issues. However, Mr. Boev's continued detention at Jackson places him a higher risk category.

### III. FRANKLIN CORRECTIONS CENTER IS FAILING TO PROTECT DEFENDANTS FROM COVID-19

For defendants' housed at FCCCII, they live in large groups together sharing a toilet and trough like sinks. Urinals are filled with urine, feces, vomit and other bodily fluids as well as untreated mold within the facility. These issues were noted to be ongoing from roughly October 2019 through January 2020 and were being worked on and treated over a six to eight-week period since January 2020.

As additional people are arrested who have been out in the community as the coronavirus spreads, if they are not symptomatic, they will be brought into FCCC, and held with the existing population, potentially bringing COVID-19 into this population held in large numbers, close quarters, and with low sanitary conditions. Counsel has attached an Affidavit prepared by Dr. Brie Williams, a Professor of Medicine at the University of California at San Francisco in the Geriatrics Division that details the serious challenges faced by inmates held in local lock-ups across the country. (Ex. 1). The conditions that she describes are present at Jackson Pike the facility where Mr. Boev is being held in custody.

### IV. THE CONDITIONS AT FCCC NECESSITATE MR. BOEV'S RELEASE TO HOME CONFINEMENT PENDING THE TRIAL

Mr. Boev cannot adequately prepare his defense in his trial because FCCCII formally suspended all social visits and attorney/client contact visits on March 16, 2020 to the COVID-19. *See* https://abc6onyourside.com/news/local/franklin-county-children-services-suspended-after-guidance-from-health-officials. FCCCII does not have any video capabilities for attorneys to continue to have face to face and private communications with their clients.

Trial preparation cannot be conducted without direct face-to-face client contact. A defendant cannot assist in their defense without the ability to prepare with their counsel. *See Ching v. Lewis*, 895 F. 2d 608 (9th Cir. 1990)(holding that "a prisoner's right of access to the courts includes contact visitation with his counsel…the policy of denying a prison contact visits with his attorney prohibits effective attorney-client communication and unnecessarily abridges the prisoner's right to meaningful access to the courts."); *Dreher v. Sielaff*, 636 F. 2d 1141 (7th Cir. 1980)("an inmate's opportunity to confer with counsel is a particularly important constitutional right which the courts will not permit to be unnecessarily abridged"); *Bounds v. Smith*, 430 U.S. 817, 97 S. Ct. 1491 (1977)(the Fourteenth Amendment guarantees meaningful access to courts); *Procunier v. Martinez*, 416 U.S. 396, 419, 94 S. Ct. 1800 (1974)(overruled in part on other grounds)(substantial and unjustifiable burdens on the right of access to courts are invalid; "inmates must have a reasonable opportunity to seek and receive the assistance of attorneys.").

Finally, the Bureau of Prisons has issued a system-wide lockdown in all of their facilities all across the country because of the spread of the COVID-19 virus and the fear of uncontrollable outbreaks occurring in the facilities that would overwhelm their medical capability to care for

inmates. (Ex. 2) Many courts across the country have issued orders extending the self-surrender dates of those having to report in April and May, until the virus has been contained.

**WHEREFORE,** for the reasons set forth above, Defendant Radoslav Boev requests this Court to reconsider the issue of detention and grant his emergency motion allowing for him to be released upon conditions of electronic home confinement and GPS monitoring to his mother's home in New York, NY.

Respectfully submitted,

DEBORAH L. WILLIAMS
FEDERAL PUBLIC DEFENDER

/s/ George Chaney
George Chaney (LA 22215)
Assistant Federal Public Defender
Federal Public Defender's Office
10 West Broad Street, Suite 1020
Columbus, Ohio 43215-3469
(614) 469-2999
George_Chaney@fd.org
RADOSLAV BOEV

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ George Chaney
George Chaney